# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## Borough of Freemansburg, Plff. in Err., v. Jeremiah Rodgers.

On appeal to the common pleas from a report of viewers assessing damages to plaintiff by reason of a change of grade in a street,—*Held*, that testimony of the viewers that they had heard the testimony of the witnesses before them as to the injury to the property, and the opinion of the viewers that the change of grade was a damage to the property, after having testified to an acquaintance with the value of such property and that they had viewed the premises, was admissible.

*Held also,* that the cause of action accrued at the time of the physical change of grade on the ground.

*Held also,* that the measure of damages is the difference in the market value of the property before the change of grade in the immediately adjoining property and the market value after the change of grade in front of the property, with interest on the principal sum to date.

Cited in Jones v. Bangor, 144 Pa. 638, 648, 29 W. N. C. 247, 23 Atl. 252.

NOTE.—*Damages* arising from the change of grade of a street accrue from the time of the actual, physical change. Jones v. Bangor, 144 Pa. 638, 23 Atl. 252.

The act of May 24, 1878, provided for the assessment of damage on the petition of the individual property owner. The act of May 16, 1891, furnishes a means for ascertaining the damage to all properties affected. Notwithstanding the latter act, the former may be resorted to for the ascertainment of the damages to the property of a citizen. Seaman v. Washington, 172 Pa. 467, 33 Atl. 759; Bowers v. Braddock, 172 Pa. 596, 33 Atl. 759.

*Held further,* that an assent to the change of grade by plaintiff at a time when he was not the owner of the property would not bind him after he became such owner, and that statements made in his hearing before he became the owner, or acquired any title in the property, to which he gave no dissent, were not evidence of any assent upon his part to the change in the grade.

(Argued March 9, 1887.  Decided March 21, 1887.)

July Term, 1886, No. 210, E. D.   All the Judges present. Error to the Common Pleas of Northampton County to review a judgment on a verdict for plaintiff on an appeal from a report of viewers assessing damages to plaintiff by reason of a change of grade in a street.   Affirmed.

The facts are fully stated in the charge of the court below to the jury.

The witnesses at the trial, Theodore Fradeneck, Francis Held, A. J. Snyder, and Christopher Gebhardt, were viewers appointed by the court on petition of Rodgers to assess damages to him caused by the change of grade in question.

Theodore Fradeneck, after having testified to his familiarity with the prices of property in the borough, having bought and sold real estate there, and that he was a viewer in the proceedings to assess damages to Rodgers caused by the change of grade in question, being examined further on behalf of the plaintiff, testified as follows:

*Q.* Afterwards did you hear the testimony of the residents of the borough who gave an opinion as to the injury which was sustained to the property by reason of that change of grade?

Objected to as incompetent and irrelevant.   Objection overruled.   Bill sealed.

*A.* There was testimony, yes, of a number of witnesses, but I do not recollect how many.

*Q.* State whether or not in your opinion such raising of the sidewalk was a damage to the property.

*A.* It was.

*Q.* Are you acquainted with the value of property in Bethlehem and around it?

Objected to as incompetent and irrelevant.   Objection overruled.   Bill sealed.

*A.* Well, to some extent, I am.

*Q.* State whether or not in your opinion such raising of the sidewalk was a damage to the property.

*A.* It was.

A. J. Snyder, examined on behalf of the plaintiff, testified as follows:

*Q.* After you had looked about the property did you hear the testimony of witnesses on the question of damages?

Objected to as incompetent and irrelevant. Objection overruled. Bill sealed.

*A.* Yes, but I cannot mention the number of witnesses we heard.

*Q.* State whether or not that change was a damage to the property.

*A.* Yes, I think it was.

Francis Held, examined on behalf of the plaintiff, testified as follows:

*Q.* After you had viewed the premises with the special end in view of ascertaining the damages sustained by Mr. Rodgers—

*A.* Yes.

*Q.* After you had viewed the premises did you hear the testimony of a number of witnesses from the residents of the borough upon the subject?

Objected to as incompetent and irrelevant. Objection overruled. Bill sealed.

*A.* Yes.

*Q.* State whether the raising of that sidewalk was a damage to the property.

*A.* I think it was.

Christopher Gebhardt, examined on behalf of the plaintiff, testified as follows:

*Q.* Are you acquainted with the general market value of property in Easton?

Objected to as incompetent and irrelevant. Objection overruled. Bill sealed.

*A.* Yes.

*Q.* State whether or not in your opinion the raising of that sidewalk was a damage to Jeremiah Rodgers' property.

Objected to as incompetent and irrelevant. Objection overruled. Bill sealed.

Plaintiff, *inter alia,* presented the following points:

1. The cause of action accrued at the time of the physical change of grade on the ground.

*Ans.* This point we affirm.

2. The measure of damages in this case is the difference in the market value of the property before the change of grade in the immediately adjoining property, and the market value after the change of grade in front of the property, with interest on the principal sum to date.

*Ans.* This point we affirm.

Defendant, *inter alia,* presented the following points:

1. If the jury find that the grade of the several streets, including the pavements of the borough of Freemansburg, was fixed in 1870 by the corporate authorities, and further find that work was done in raising Main street in front of Joseph Lerch's property to the proper grade, and in raising the pavement on Main street in front of said property to within 5 or more inches of the proper grade, either before or after 1870, and before October 26, 1878, when Jeremiah Rodgers, the plaintiff, purchased the property from the heirs of Joseph Lerch, deceased; and although the raising of the pavement to the proper grade was completed after the date of said purchase, this does not entitle Jeremiah Rodgers to any share of the damages, if any were sustained to the property by reason thereof, as he took the property by his purchase *cum onere,* and the verdict must be for the defendant.

*Ans.* If that point means that work was done in raising Main street in front of Joseph Lerch's property by the borough of Freemansburg, or in conformity to any action of the municipal authorities, then this point would be true. If it does not mean that, and it simply means the raising of the pavement by somebody else, other than the borough authorities, or without their assent, or not in conformity to any demand upon their part, then we negative this point.

2. If the jury find the facts set forth in the foregoing points as therein stated, and further find that at the time of the sale of the property it was stated by the heirs of Joseph Lerch, deceased, and others in the hearing and presence of Jeremiah Rodgers that the purchaser of the property would be required to raise the pavement on Main street in front of the property to the proper grade, then the legal effect of the matter set forth in this point is that Jeremiah Rodgers took the property by his

purchase *cum onere,* and the verdict must be for the defendant.

*Ans.* If the jury find the facts of the first point as qualified by the court, and as we stated when we said if it were in that way we would affirm it, then we also affirm this point. If the jury do not so find, then we negative this point.

7. The act of assembly under which this claim is brought does not apply to or cover a case where no essential change of grade or alteration is made. Merely requiring the owner of a lot to raise his pavement 3 or 4 inches, to a level with the pavement of his neighbors, is not such essential change of grade or alteration.

*Ans.* This point we deny, as applicable to this case.

The court, REEDER, J., charged the jury as follows:

In this action Jeremiah Rodgers, the plaintiff, seeks to recover from the borough of Freemansburg damages which he alleges that he sustained by reason of a change of grade on Main street, in the borough of Freemansburg.

Prior to 1878, under the laws of Pennsylvania, persons who were damaged by reason of a change of grade of a street were not permitted to recover any damages against the municipal corporation creating such damages. Since then, however, by reason of an act of assembly passed in that year, the legislature directed that persons suffering damage by reason of the change of grade by a municipal corporation should be compensated for the amount of the damage which they had suffered by reason of any change of grade.

[Under the provisions of that act of assembly, before the jury can render a verdict awarding damages to a plaintiff in any case, they must find: first, that a change of grade has been made; second, that the change of grade has depreciated the value of the property; third, that the change was made without the consent of the owner of the property. In considering this case which you have been sworn to try, I will direct your attention to these three propositions inversely; and you will therefore consider, before passing upon the evidence in determining your verdict, first, if there was any change, whether the change was made without the owner's consent.

It is a legal presumption that no man will consent to any injury affecting his person or property. This is a mere presumption, however, which can be overthrown by evidence to the

contrary.   Therefore, when the plaintiff has proven, if he has succeeded in convincing you that the injury has been done to the property of Jeremiah Rodgers, the burden of proof, by reason of this legal presumption, rests upon the defendant to convince you that it was done with his consent.   In the absence of any such evidence the law presumes that the injury done to the property, if any was done, was done without his consent.   The only evidence in the case was that which I admitted under the offer of the defendant in relation to the declarations which were made at the public sale by Joseph Lerch's heirs of this property and were testified to have been made by Peter A. Fritchman in the presence of Jeremiah Rodgers, but which was denied by Rodgers.   Those declarations were that an obligation would rest upon the purchaser of the property to raise the sidewalk in front of the property on Main street to the established grade.

I admitted the evidence as I said then, because it was some evidence of his assent, not knowing at the time how far the defendant's testimony would go in support of it.   We say to you now, that you shall disregard that testimony in considering whether there was any evidence of assent upon the part of Jeremiah Rodgers, and even though Jeremiah Rodgers assented to them at the time, we do not think that that assent, made by him at a time when he was not the owner of the property, could bind him after he became the owner of the property.   It is a doubtful question in my mind whether assent made in that way is the assent that is required by the act of assembly.   It is a doubtful question whether the assent required by the act of assembly is not a formal assent by the party, indicated in some way to the municipal authorities, and even though he were the owner of the property at the time and had assented,—not listened to without assenting, as the testimony is,—but had assented to the proposition that it would be the duty of the purchaser of that property to raise the pavement, that any such assent upon his part would be a waiver of his legal right to recover any damage which he may have suffered by reason of any elevation of the pavement. But it is not necessary for me to decide that question.   It does not arise here.

The proposition as submitted is that certain statements or declarations were made at the time in his hearing, before he became the purchaser or owner, or acquired any title in the property, to which he gave no dissent.   This is not evidence of any

assent upon his part at all, and, therefore, so far as that testimony bearing upon the question of his assent to the alteration of it or change in the grade of the pavement is concerned you will disregard it entirely in making up your verdict.]   Therefore, the testimony leaves you without any evidence of his assent to this change of grade at all,

You will, therefore, consider the next proposition, whether there was a change of grade.

It does not affect the right of the party injured to recover damages whether the change of grade is from a grade previously established by the borough council or whether it was a change from the natural surface of the ground; that is to say, it does not matter whether the borough has formally, by resolution, established a grade at that place and afterwards by resolution or ordinance changed it, or whether the natural grade of the surface of the ground at that place has been the grade at that point, and the borough afterward changed it by fixing another grade to which it elevates the street.   In either event the plaintiff would be entitled to recover if such change caused a depreciation of the market value of his property.

The natural grade is the grade of the street at which it has been maintained for the convenience of the public.   The words "change of grade" are used by the courts interchangeably for two purposes: first, for the purpose of indicating the change of grade as fixed by ordinance and as indicated by the official map of the borough; and second, the change of grade which is the physical, actual alteration of the ground so as to conform to the proper grade, or the grade established on the borough map.   It is the latter, we say to you, and the latter only, for which persons injured are entitled to recover; that is to say, the right of action against the borough for a change of grade in a street does not commence with the fixing of the grade upon the borough map. It is not the paper grade that gives parties owning property along a street a right of action.   It is the actual, physical work done upon the street in order to make the surface of the street conform to the actual grade.   So in this case.

No matter when the ordinance of council was adopted fixing the grade, if you find from the evidence that the first attempt of the borough to make this street actually conform to the grade fixed by the resolution of 1870, adopting the map, in front of the plaintiff's property was when they raised the pavement, and

that the, raising of the pavement on Main street was a damage to the market value of the property, then the plaintiff is entitled to recover; that is to say, that if you find as a fact that when the plaintiff's pavement on Main street was first put down it conformed to the surface of the ground as it then was, that when the pavement was first laid in front of that property it was laid upon and in accordance with the surface of the ground as it was at that time, and that the first time that the borough took any steps to elevate that street, so as to conform to the grade fixed by it by the resolution of 1870 adopting the borough map, was at the time in 1881, which was testified to by plaintiff's witnesses, then we say to you that that was such a grade as would entitle the plaintiff to recover, if he had suffered any damage to his property in consequence of it.

[If you believe from the evidence that in 1858, or in any year prior to 1870, the borough authorities graded the street by filling the hollows and digging down the hillocks that existed along that street without fixing a regular grade by ordinance or resolution, then the elevation and the position in which they left the street and pavement at that time was the grade of that street; and no matter whether the pavement was higher or lower than the street at that time, the condition in which they left it was the grade for the pavement as well as the condition in which they left the street was the grade of the street.]

[The borough could, and if you find that it did not by any subsequent action, adopt and enforce a grade, and enforce the raising of the pavement so as to conform to the grade which it then adopted, until 1881, and that it then raised the pavement in front of Jeremiah Rodgers' property on Main street so as to conform to the grade of 1870; and if you believe, furthermore, that the grade of 1870 was a change from the grade of the ground or of the pavement as it left it when it elevated the street in 1858, and that the change of 1881 was a damage to that property, then we say to you that the plaintiff would be entitled to your verdict.]

If, however, you find that there was no change of grade, that the pavement as laid did not conform to the natural surface of the ground, and that after it was raised, then, for the first time, it conformed to the natural surface of the ground, or the condition in which the borough left the street after its improvement upon the street in 1858, then the plaintiff would not be entitled

to your verdict, and your verdict would have to be for the defendant.

[If you believe from the testimony that there was no physical conformation of this pavement to the grade established in 1870, and you believe that the grade of the pavement was in the same condition and at the same elevation that it was after the borough had completed its work upon the street in 1858, and that the change in order to make the pavement conform to the grade of 1870 was not until Jeremiah Rodgers became the purchaser of this property in 1881, then he would be entitled to recover.]

I do not know whether or not I have made clear to your minds the position which I have been discussing; but I will restate the proposition as clearly as possible.

It was testified to by the defendant's witnesses that in 1858 changes were made in the elevation of this street, in the grade of Main street. If you believe that to be true, and you believe that after it made the changes in that street there was no fixed elevation or grade of the street, and the testimony shows none, and you must therefore assume that there was none, then the condition in which it left the street was the grade for the street; and the position or elevation at which it left the pavement was the grade of the pavement.

[There is no contention that that grade so left by the borough in 1858 was ever fixed by any subsequent ordinance or resolution of the borough until 1870, when it adopted this official map, which is in evidence, and which fixed the grade of that street. When that map was adopted fixing the grade of Main street in front of that property that fixed the grade of both the pavement and the street.

The testimony in the cause upon the part of the defendant was that that map made no change of grade in front of Rodgers' property, so far as the street was concerned, if it made a change in the grade so far as the sidewalk was concerned; and that afterwards the borough, in 1881, elevated that sidewalk in order to make it conform to the grade established in 1870. If that elevation was a damage or an injury to the property, then the plaintiff would be entitled to recover in this action.] If it did not do so, or if it was no injury to the property, then the defendant would be entitled to your verdict.

You will next have to determine what, if any, is the amount of the damage to which the plaintiff is entitled by your verdict if you should find that he is entitled to any.

If this injury was a damage in the way in which I have already stated, if you find the facts which are essential to your verdict, as I have already stated them in the first part of my charge to be, and you find that they caused any damage to the property of Jeremiah Rodgers, you will have to determine what the amount of that damage is. The testimony in relation to the damage that was caused to the property by reason of the elevation of the pavement on Main street has already been alluded to. The claim of the plaintiff was that it was for the depression in the yard of the house, he being obliged to step down from the pavement upon the yard and again step up in order to go into the house, and that it was for the water being turned from the yard into his cellar,—from the pavement into his cellar,—and from the interference, by the elevation of the pavement, with the front gate, and the damming of the water running down Madison street upon his pavement by the elevation of this pavement on Main street and turning it into his property and thence into his cellar.

You have heard the testimony in regard to it and you will take the evidence into consideration upon all these questions, and determine whether they have caused him any damage or not. I will only call your attention to the testimony in relation to the condition of the pavement on Madison street, he claiming that the water running down Madison street was turned, by reason of the elevated condition of the pavement on Main street, into his property. The defendant claims that this was caused by his own negligence, he having had the established grade on Madison street given to him by the borough surveyor, and he having refused to lay his pavement in conformity to it. If that is true, then you would have to eliminate from your consideration the turning of the water because of that condition of the pavement; because, if that allegation of some of the defendant's witnesses is true, then the plaintiff would not be entitled to recover because of that.

Jeremiah Rodgers, however, contends that he laid his pavement on Madison street, in conformity with the grade given to him by the borough surveyor, and said something in connection with that about stakes being driven. If that is true, and you believe his testimony, and you believe that that pavement was laid in conformity with the grade given to him by the borough surveyor, then he would be entitled to recover for any damages sus-

tained by reason of the elevation of the pavement on Main street and the turning of the water into his property, if you believe that it was so turned in. So also with the condition of the fence; if you find that the raising of the pavement interfered with the opening of the gate, that would be an element which you would have a right to take into consideration in determining the amount of damages to which he was entitled.

The true measure of damages, however, is this: it is not the amount which it would cost him to place his property in the same condition that it was before, but it is the difference in the market value of the property before the change of grade and after the change.

It is contended by the plaintiff upon the one hand and disputed by the defendant upon the other, that the difference in the market value which is to be the measure of damages in this case must be found by the jury to be the difference between the property as it was originally left in 1858, and the condition in which it was after the pavement was elevated so as to grade with the pavement on either side. We say to you that that is correct, as a matter of law; that after the borough had compelled the adjoining property owners to elevate their pavement so as to conform to the established grade, that if by that act the property of Jeremiah Rodgers was depreciated, you have no right to take such depreciation of value into consideration in order to arrive at the amount of appreciation of value after the pavement was elevated.

The true comparison is the condition in which the borough left the pavement in 1858, after it had fixed and graded that street and left it until 1870, when it made the first change (if you believe that that is the fact, that the first change after 1858 was made in 1870), the condition in which it was at that time is the condition with which you must compare the property after it was elevated to the grade, and the difference between its value then, or in that condition, and its value at the time it was up upon grade after the alteration is the true measure of damages which you must find in this case. You will understand very easily that if a borough or a municipal corporation direct a change of grade along a street, and the pavements are elevated upon either side of a property, that that depression in the pavement would of course be, under ordinary circumstances, a depreciation in the value of the property. But in order to arrive at the measure of damages which the owner of that property would sustain after

his pavement had been elevated to grade, you would have no right to take into consideration the condition of his property when his property is depressed by reason of the change to grade of the adjoining property owners; but you would have to compare it with the market value of his property before the change of grade, if it was on a level with the pavement of the property owners adjoining, and its condition after it had been raised by the borough; and the difference is the true measure of damages for your consideration.

I do not propose to comment upon the testimony in this case. A number of witnesses have been examined upon both sides who have testified as to their opinion in regard to the amount of damages. [If you believe from the evidence that his property is worth more to-day than it was prior, or as much to-day as it was prior, to the elevation of the pavement, then your verdict will be for the defendant. If you believe it is worth less to-day than it was before the elevation of the pavement, then your verdict will be for the plaintiff; and it will then be your duty to ascertain from all the evidence in the case how much less it is worth; and after having determined how much less this property is worth to-day than it was before the change of the grade, then you will allow that in your verdict with interest from the time of the injury.]

A verdict was returned in favor of plaintiff for $387.45 and a judgment entered thereon.

The assignments of error specified the action of the court in admitting the evidence above noted; the answers to the plaintiff's first and second points, defendant's first, second, and seventh points, and the portions of the charge inclosed in brackets.

*O. H. Meyers* and *W. E. Doster,* for plaintiff in error.—The questions asked the witnesses were incompetent and irrelevant. It enabled the witnesses to testify to the opinion of others, which the law does not tolerate; besides, the admission of this testimony was in violation of the plainest and most familiar rule of evidence, which forbids the introduction of hearsay testimony.

The rule laid down by the court as to the measure of damage is in clear contravention of the rule, repeatedly declared by our supreme court, that "the measure of damages is the difference between what the property would have sold for as affected by the

injury, and what it would have brought, unaffected by such injury." Schuylkill Nav. Co. v. Thoburn, 7 Serg. & R. 411; Delaware, L. & W. R. Co. v. Burson, 61 Pa. 369; Shenango & A. R. Co. v. Braham, 79 Pa. 452.

In the latter case the court says that the rule, as laid down in 7 Serg. & R. 411, has been followed in Pennsylvania R. Co. v. Heister, 8 Pa. 450; Searle v. Lackawanna & B. R. Co. 33 Pa. 57, and in a number of other cases there cited.

The cases of Easton v. Walter, 2 Sad. Rep. 91, 2 Cent. Rep. 589; Setzler v. Pennsylvania S. Valley R. Co. 112 Pa. 56, 4 Atl. 370; and Pittsburgh, B. & B. R. Co. v. McCloskey, 110 Pa. 436, 1 Atl. 555, are to the same effect.

The error committed here is that the point of time when the jury are to determine the value of the property is to-day, that is at the time of the trial; and if it is worth less to-day than it was before the change of grade, then the difference is the amount which the plaintiff is entitled to recover. The alleged change of grade was done in June, 1881. The case was tried in 1886; and, for aught we know, the value of the property in 1886 may have depreciated from other causes since 1881. Shimer v. Jones, 47 Pa. 276.

The court below erred in giving binding instructions to the jury to allow the plaintiff interest on the amount of damages found by them from the time of the injury to the date of the verdict. Weir v. Allegheny County, 95 Pa. 413; Second & Third Street Pass. R. Co. v. Philadelphia, 51 Pa. 468; Easton Bank v. Com. 10 Pa. 453; Getz v. Philadelphia & R. R. Co. 15 W. N. C. 358.

Rodgers, the purchaser of the property, bought it *cum onere*, and is therefore not entitled to any damage by reason of the subsequent raising of the pavement. In other words, the law required him to regulate his bid on the property, so that he paid no more for the property than it was worth, as affected by the subsequent raising of the pavement. New Brighton v. Peirsol, 107 Pa. 283; Memmert v. McKeen, 112 Pa. 315, 4 Atl. 542; Patterson v. Arthurs, 9 Watts, 152; Wilson v. Cochran, 48 Pa. 107, 86 Am. Dec. 574.

*William Mitchler* and *H. J. Steele,* for defendant in error.— The questions asked the witnesses were competent. Beatty v. Gilmore, 16 Pa. 463, 55 Am. Dec. 514; Pennsylvania & N. Y.

R. & Canal Co. v. Bunnell, 81 Pa. 414; Dickenson v. Fitchburg, 13 Gray, 546; First Nat. Bank v. Wirebach, 106 Pa. 37; Minnequa Springs Improv. Co. v. Coon, 10 W. N. C. 502.

The rule as to the measure of damages given the jury by the court was correct. Schuylkill Nav. Co. v. Thoburn, 7 Serg. & R. 411; Philadelphia v. Linnard, 97 Pa. 142; Delaware, L. & W. R. Co. v. Burson, 61 Pa. 380.

A charge must be tested by its general effect on the minds of the jury, and not by the sentences culled here and there. If as a whole the charge was calculated to mislead the jury, there is error in the record; if not, there is none. Reeves v. Delaware, L. & W. R. Co. 30 Pa. 454, 72 Am. Dec. 713; Watts v. Cummins, 59 Pa. 84; Lehigh Valley R. Co. v. Brandtmaier, 113 Pa. 610, 6 Atl. 238.

In Little Schuylkill Nav. R. & Coal Co. v. French, 2 W. N. C. 718, the jury were told they might measure the proportion of the injury done by the defendants, with a liberal hand, and it was held not to be error taking the charge as a whole.

See also Carman v. Clarion River Nav. Co. 2 W. N. C. 720; Blair Iron & Coal Co. v. Lloyd, 3 W. N. C. 103.

Directing the jury to allow interest on the amount of damages from the time of the injury was not error.

Where the property of a citizen is injured by a corporation, against or without his consent, under an authority coupled with the constitutional obligation to pay a just compensation, the duty of ascertaining the amount is an incident to the obligation to pay, and clearly falls upon the corporation. Philadelphia, W. & B. R. Co. v. Gesner, 20 Pa. 240.

Under the act of May 24, 1878, the liability of the borough was fixed at the time of the physical change of grade, and the injured party had the right to expect his money at that time. Delay of payment beyond that time is consequently an injury for which the only compensation is interest. Philadelphia v. Dyer, 41 Pa. 463; Pennsylvania R. Co. v. Cooper, 58 Pa. 408; Delaware, L. & W. R. Co. v. Burson, 61 Pa. 369; Bare v. Hoffman, 79 Pa. 71, 21 Am. Rep. 42.

PER CURIAM:

A careful examination of the questions relating to the admission of evidence discloses no substantial error. Some answers may have been irrelevant, but they did no harm. The evidence

was fairly submitted. We see no error in the charge nor in the answers to the points.

Judgment affirmed.